## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KATHRYN T. HALLORAN,       )
                          )
           **Plaintiff,**       )
                          )
                          )
          vs.           )     **CIVIL ACTION No. 1:07-cv-00152-JDB**
                          )
                          )
ELI LILLY AND COMPANY,     )
                          )
          **Defendant**.     )
                          )

## DEFENDANT ELI LILLY AND COMPANY'S
## MOTION TO TRANSFER TO THE DISTRICT OF MASSACHUSETTS

Defendant Eli Lilly and Company ("Lilly") hereby moves to transfer this action, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the District of Massachusetts.

This case should be transferred because the District of Massachusetts is a more convenient forum than the District of Columbia, the action could have been brought in the District of Massachusetts, and transfer out of a district with absolutely no connection to the plaintiff's cause of action is in the interest of justice.

Transfer to the United States District Court for the District of Massachusetts is appropriate because it is a more convenient forum for the parties and witnesses:

- Plaintiff's mother, a witness who has substantial knowledge of facts at issue in this case, resides in Hanover, Massachusetts; Plaintiff Kathryn Halloran was born in Dorchester, Massachusetts;

- Plaintiff Kathryn Halloran was born in Dorchester, Massachusetts;

- The events allegedly giving rise to plaintiff's cause of action -- the prescription, purchase, and alleged exposure to DES – all occurred in Massachusetts;

- Plaintiff's doctors who purportedly provided her fertility treatment and diagnosed and treated plaintiff's alleged injuries are located within the subpoena power of the District Court for the District of Massachusetts;

- At least one of plaintiff's other treating doctors is located in Massachusetts and is within the subpoena power of the District Court for the District of Massachusetts;

- Lilly is not aware of a single non-party fact witness who resides in the District of Columbia or is within the subpoena power of this Court;

- This case has no apparent connection to the District of Columbia except that the case was filed here; and

- The interests of justice will not be served by burdening the citizens of the District of Columbia with a case that has no connection to this forum.

Therefore, in the interests of justice and for the convenience of the parties and witnesses, the Court should transfer this action to the United States District Court for the District of Massachusetts.

## L.Cv.R. 7(m) CERTIFICATION

Counsel for Lilly has conferred with plaintiff's counsel, as required by L.Cv.R. 7(m), and plaintiff does not consent to the relief sought in this Motion.

WHEREFORE, for these reasons and those more fully set forth in the accompanying memorandum of points and authorities in support of this motion, defendant Eli Lilly and Company respectfully requests this Court to grant its motion to transfer this case to the District of Massachusetts.

Respectfully submitted,

   /s/ John C. Coots_____
Michelle R. Mangrum, D.C. Bar No. 473634
John Chadwick Coots, D.C. Bar No. 461979
Emily J. Laird, D.C. Bar No. 485890
SHOOK, HARDY & BACON, L.L.P

2

600 14TH Street, NW Suite 800
Washington, D.C.  20005-2004
Phone: (202) 783-8400
Fax: (202) 783-4211

and

David W. Brooks
Mark C. Hegarty
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Blvd.
Kansas City, MO  64108
Phone: (816) 474-6550
Fax: (816) 421-5547

**ATTORNEYS FOR DEFENDANT
ELI LILLY AND COMPANY**

3

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, this 19th day of April, 2007, which sent notification of such filing to all counsel of record listed below.

Aaron M. Levine
Aaron Levine & Associates
1320 19th St., N.W., Suite 500
Washington, D.C. 20036
**Attorneys for Plaintiff**

/s/ John C. Coots
**ATTORNEY FOR DEFENDANT**
**ELI LILLY AND COMPANY**

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KATHRYN T. HALLORAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIVIL ACTION No. 1:07-cv-00152-JDB |
| vs. | ) | |
| | ) | |
| | ) | |
| ELI LILLY AND COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OF POINTS AND AUTHORITIES
### IN SUPPORT OF DEFENDANT ELI LILLY AND COMPANY'S
### MOTION TO TRANSFER TO THE DISTRICT OF MASSACHUSETTS

This product liability action, in which a Texas resident who was born in Massachusetts alleges injuries as a result of her alleged exposure to a synthetic estrogen, diethylstilbestrol ("DES"), during her mother's pregnancy with her in Massachusetts, has no connection to the District of Columbia and should be transferred to the United States District Court for the District of Massachusetts. Specifically, under § 1404(a), this Court may transfer this action to the District of Massachusetts "[f]or the convenience of parties and witnesses, in the interest of justice." The relevant factors in this case demonstrate that the United States District Court for the District of Massachusetts is a more convenient forum for the parties and witnesses and that the interest of justice would be served by transfer:

- Plaintiff's mother, a witness who has substantial knowledge of facts at issue in this case, resides in Hanover, Massachusetts;

- Plaintiff Kathryn Halloran was born in Dorchester, Massachusetts;

- The events allegedly giving rise to plaintiff's cause of action -- the prescription, purchase, and alleged exposure to DES – all occurred in Massachusetts;

2409725v1

- Plaintiff's doctors who purportedly provided her fertility treatment and diagnosed and treated plaintiff's alleged injuries are located within the subpoena power of the District Court for the District of Massachusetts;

- At least one of plaintiff's other treating doctors is located in Massachusetts and is within the subpoena power of the District Court for the District of Massachusetts;

- Lilly is not aware of a single non-party fact witness who resides in the District of Columbia or is within the subpoena power of this Court;

- This case has no apparent connection to the District of Columbia except that the case was filed here; and

- The interests of justice will not be served by burdening the citizens of the District of Columbia with a case that has no connection to this forum.

Accordingly, in the interests of justice and for the convenience of the parties and witnesses, the Court should transfer this action to the United States District Court for the District of Massachusetts.[1]

## I.    THIS COURT SHOULD EXERCISE ITS BROAD DISCRETION AND TRANSFER THIS ACTION TO THE DISTRICT OF MASSACHUSETTS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Whether to transfer an action to a more convenient forum falls within the wide discretion of the district court. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981) ("District courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of forum non conveniens"). Transfer is proper where the action might have been brought originally in the transferee district; where the transferee district is more convenient for witnesses likely to be called at trial; where there is no nexus between the

---

[1]    Alternatively, this case should be transferred to the United States District Court for the Western District of Texas because this case has a greater factual nexus with Texas than the District of Columbia. Plaintiff currently resides in San Antonio, Texas and her current primary care physician is located there as well. *See* caption of Complaint; Plaintiff's Answers to Defendant Eli Lilly and Company's First Set of Interrogatories, excerpts attached as **Exhibit 1,** at No. 7.

transferor district and the cause of action; and where the interests of justice would be served by transfer. *See* 28 U.S.C. § 1404(a).

In *Thompson v. Eli Lilly and Company*, Civil Action No. 03-CV-00122 (D.D.C. June 27, 2003) (Walton, J.), this Court granted Lilly's Motion to Transfer a DES case from the District of Columbia because there was a greater connection between the facts of that case and the transferee forum, the District of New Jersey. The Court noted: "While it is significant that New Jersey has such strong connections to this case, equally significant is that the District of Columbia has no such connection to this matter." (*See* **Attachment A** to Affidavit of John C. Coots in Support of Defendant Eli Lilly and Company's Motion to Transfer, attached as **Exhibit 2**). *See also Abramson v. Eli Lilly and Company*, Civil Action No. 03-CV-2541 (D.D.C. Oct. 25, 2004) (Bates, J.) (noting that despite previous denials of motions to transfer in DES cases, where there is a strong connection to a particular jurisdiction and no connection to the District of Columbia, transfer is appropriate) (**Attachment B** to Exhibit 2); *Lentz v. Eli Lilly and Company*, Civil Action No. 06-1374 (D.D.C. December 18, 2006) (Huvelle, J.) (holding that "[t]he plaintiff's choice in forum therefore carries little, if any, weight" and that Lilly's contacts in the District of Columbia "do not tip the balance in favor of maintaining this case in the District of Columbia, particularly when compared with the nucleus of facts, witnesses, and documents located" in another jurisdiction) (**Attachment C** to Exhibit 2).

In both *Thompson* and *Abramson*, this Court distinguished earlier decisions denying Lilly's motions to transfer DES cases out of the District of Columbia. For example, in *Thompson*, Judge Walton noted that *Thompson* was "clearly distinguishable" from *Ingram v. Eli Lilly and Company*, 251 F. Supp. 2d 1 (D.D.C. 2003), because the witnesses in *Ingram* were no longer in Washington state, where plaintiff was exposed to DES, but were spread throughout

the country. Similarly, in *Abramson*, Judge Bates distinguished the facts of that case from cases where motions to transfer had been denied because *Abramson* had no connection to the District of Columbia, but had a strong connection to another forum. "Unlike many of the other DES cases, where relevant witnesses are spread around the country (even in the District of Columbia), this is a case with a single forum that is plainly most convenient for the witnesses." (*See* Attachment B to Exhibit 2, p. 4)

As set forth below, this case has no connection to the District of Columbia, but a strong connection to the District of Massachusetts. It would be more convenient for the parties to litigate this action in Massachusetts where many of the crucial fact witnesses reside or can be summoned by the Court's subpoena power.[2]

### A.    This Action "Might Have Been Brought" Originally In The United States District Court For The District Of Massachusetts

Section 1404(a) permits transfer to a district or division where the case could have been brought in the first instance. 28 U.S.C. § 1404(a). Plaintiff could have brought this action originally in the District of Massachusetts. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(a)(2), which provides that "[a] civil action wherein jurisdiction is founded only on diversity of citizenship may be brought only in...a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2).

Here, plaintiff's mother was allegedly prescribed, purchased and ingested DES in Massachusetts, where she resided throughout her pregnancy with plaintiff. (*See* Exhibit 1, at

---

[2] This court has recently noted that the fact that the subpoena power of the transferee court reaches the non-party witnesses is a factor weighing in favor of transfer. (**Attachment C** to Exhibit 2, at p. 3); *see also McKelvey v. Eli Lilly and Company*, Civil Action No. 06-1820 (Collyer, R.) (**Attachment D** to Exhibit 2, at p. 4) ("A court's ability to compel the appearance of unwilling non-party witnesses is an important factor in determining a motion to transfer.") (citations omitted).

Nos. 11, 17 and 20)  Plaintiff was allegedly exposed to and injured by DES *in utero* in Massachusetts. (*Id.* at Nos. 11, 12, 20; Complaint ¶¶ 3-4)  Moreover, plaintiff's mother currently resides in Massachusetts.  (*Id.* at No. 17)  Many of plaintiff's treating physicians, who allegedly diagnosed and treated her alleged injuries, are in Massachusetts or are within the subpoena power of the United States District Court for the District of Massachusetts.[3] (*Id.* at Nos. 8, 9 and 14)  Plaintiff lived in Massachusetts for approximately 32 years, from 1962 until 1994.  (*Id.* at Nos. 1-2)  She currently resides in San Antonio, Texas.  (*Id.* at No. 2; caption of Complaint) Furthermore, all of plaintiff's identified treating physicians (with the sole exception of her current primary care physician), who allegedly diagnosed and treated her claimed injuries, are in Massachusetts or within the reach of the subpoena power of the United States District Court for the District of Massachusetts.[4] (*Id.* at Nos. 7, 9 and 14) Clearly, a substantial part of the events related to plaintiff's claim occurred in Massachusetts and venue is appropriate there. Additionally, the District of Massachusetts has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 since there is complete diversity of citizenship.[5]

> **B.**     **The District Of Massachusetts Is Far More Convenient For The Witnesses Likely To Be Called To Testify At Trial**

Section 1404(a) instructs district courts to consider the convenience of witnesses in deciding whether to transfer an action.  In doing so, courts have also looked at ease of access to sources of proof and the amount of expense for willing witnesses. *See Abbott Labs. v. United States Fidelity & Guaranty Co.*, 1989 WL 5557, at *2 (D.D.C. Jan. 10, 1989);  *see also Trout Unlimited v. United States Dept. of Agriculture*, 944 F. Supp. 13, 16 (D.D.C. 1996) (listing

---

[3]     *See* n. 2, *supra.*
[4]     *Id.*
[5]     Lilly does not contest the amount in controversy requirement since it does not appear to a legal certainty that plaintiff cannot recover more than $75,000.  However, Lilly denies that plaintiff is entitled to recover any damages.

as private interest considerations the ease of access to sources of proof and whether the claim arose elsewhere). As confirmed by plaintiff's answers to Lilly's interrogatories, many of the potential witnesses and sources of proof concerning the injuries alleged in this case are located in the District of Massachusetts or within that court's subpoena power.

There are a number of major issues in DES causes of action, the resolution of which typically requires examining medical, pharmacy and other records, deposing plaintiff, plaintiff's family members, physicians and others with knowledge of the events alleged in plaintiff's complaint and the ability to call these witnesses at trial. First, for example, is the issue of exposure, *i.e.*, whether the plaintiff's mother actually ingested diethylstilbestrol during her pregnancy with plaintiff. Plaintiff's mother is the principal witness on this point and resides in the District of Massachusetts. (Exhibit 1, at No. 17) Additionally, medical records for plaintiff's mother's pregnancy with plaintiff are also relevant to this issue. These are all likely located in Massachusetts. (*Id.* at No. 20) Although plaintiff claims one of her mother's prescribing physician is deceased (*Id.* at Nos. 11 and 20) the other identified prescribing physician (if alive) cannot be compelled to testify at trial in the District Court for the District of Columbia, but can be so compelled in the District of Massachusetts based upon his last known location in Quincy, Massachusetts. (*Id.* at No. 20)

Another issue is who manufactured the DES that plaintiff's mother allegedly ingested. The principal witnesses on this point are pharmacists and pharmacy employees who worked at the pharmacy where plaintiff's mother allegedly filled her prescription. In this case, plaintiff alleges that her mother filled her DES prescription at a pharmacy located in either Dorchester and/or Quincy Massachusetts. (*Id.* at No. 20) Any Massachusetts pharmacy

6

witnesses who may be identified cannot be compelled to testify at trial in the District of Columbia, but can be so compelled in the District of Massachusetts.

A third issue concerns the nature and extent of plaintiff's alleged injuries and the causes of their alleged injuries. Here, plaintiff's case depends on testimony and medical records from the physicians who diagnosed, treated and evaluated her. Plaintiff's identified treating physicians (with the sole exception of her current primary care physician, who is located in San Antonio, Texas) and medical records are primarily located in Massachusetts or are within that court's subpoena power. (*Id.* at Nos. 8, 9 and 14) **None** of the physicians whom plaintiff identifies as having treated her alleged injuries are located in the District of Columbia. (*See id.*) Lilly intends to depose plaintiff's physicians and believes it will be necessary to call them to testify at trial. For purposes of compelling these witnesses to testify at trial, all of these witnesses are subject to the subpoena power of the United States District Court for the District of Massachusetts, but none are subject to the subpoena power of this Court in the District of Columbia.

In sum, Lilly is not aware of a single fact witness who resides in or is subject to the subpoena power of the District of Columbia. Thus, when considering the convenience of the witnesses as a whole, the District of Massachusetts is by far the most convenient forum for this litigation.

### C.    Plaintiff's Choice Of Forum Is Entitled To Little Deference Because There Is No Nexus Between The District Of Columbia And The Cause Of Action

Plaintiff has chosen to sue in a forum with no factual nexus with her claims. As this Court wrote in *Abbott Labs.*, 1989 WL 5557, at *2 (D.D.C. Jan. 10, 1989), "[W]hile the plaintiff's choice of forum is generally entitled to deference, where the forum choice has no

7

factual nexus with the lawsuit, plaintiff's choice of forum may be accorded less weight in a section 1404(a) analysis….In fact, the presumption may switch to Defendant's favor when neither party resides in the chosen forum and the cause of action arises elsewhere." *Id.* (citations and internal quotations omitted). In *McClamrock v. Eli Lilly and Company*, 267 F. Supp. 2d 33, 37 (D.D.C. 2003), this Court cautioned that a plaintiff should not "blindly assume" that because she chose the District of Columbia in which to file suit, that her choice of venue will not be disturbed. "[P]laintiff's choice of forum is not accorded substantial deference where the plaintiff's choice of forum has no meaningful ties to the controversy and no particular interest in the parties or the subject matter." *Id.* (citation and internal quotation marks omitted.); *see also Boers v. U.S.*, 133 F. Supp. 2d 64, 65 (D.D.C. 2001) ("even though a court should typically give deference to a plaintiff's choice of forum, it need give substantially less deference when the forum preferred by the plaintiff is not his home forum."); *Trout Unlimited*, 944 F. Supp. at 17 ("[D]eference to the plaintiff's choice of forum…is mitigated…[and] the showing defendants must make is lessened when the plaintiff's choice of forum has no factual nexus to the case, and, where…transfer is sought to the forum with which plaintiffs have substantial ties and where the subject matter of the lawsuit is connected to that state.). *Id.* (citations and internal quotations omitted). That a plaintiff's choice of forum is not entitled to substantial deference where the plaintiff does not reside in the forum has been recognized by this Court in granting Lilly's motions to transfer other DES cases. *See Thompson*; Attachment A to Exhibit 2, p. 2 (refusing to give deference to Plaintiff's selected forum where there is no nexus between the chosen jurisdiction and the facts and circumstances of the case); *Abramson*, Attachment B to Exhibit 2, pp. 2-3 (same); *Lentz*, Attachment C to Exhibit 2, p. 5 (holding that, since "[t]he District of Columbia's ties to this case are minimal, while [the transferee district's] interests are

considerable," "[t]he plaintiff's choice of forum therefore carries little, if any, weight and is insufficient to overcome the factors that weigh in favor of transfer."); *see also McKelvey*, Attachment D to Exhibit 2, at pp. 2-3.[6]

Plaintiff does not reside in the District of Columbia and none of the events concerning plaintiff's alleged injuries as a result of *in utero* exposure to diethylstilbestrol are alleged to have occurred in the District of Columbia. Therefore, plaintiff's chosen forum is not entitled to deference.

### D. Transferring This Action To The United States District Court For The District Of Massachusetts Is In The Interests Of Justice

Lastly, the interests of justice dictate that this action be transferred to the District of Massachusetts. The Court of Appeals for this Circuit held in *Pain v. United Technologies Corp.*, 637 F.2d 775, 782 (D.C. Cir. 1980), that in weighing the public interest, courts should consider (1) the local interest in having localized controversies tried at home; (2) holding the trial in a court whose state's law will govern the case; (3) not imposing jury duty upon the people of a

---

[6]    To the extent that plaintiff claims a connection to the District of Columbia based on regulatory action by the FDA in the District of Columbia, courts in the District of Columbia have rejected governmental contacts as a basis for venue in the District of Columbia. *See In re AT&T Access Charge Litig.*, No. Civ. A. 05-1360, 2005 WL 3274561, *3 (D.D.C. Nov. 16, 2005) (Huvelle, J.) (to accept governmental contacts in D.C. as a basis for venue "would amount to an open invitation to litigants to sue private parties in this jurisdiction whenever the case has some relationship to an agency action."). *See also DeLoach v. Philip Morris Co.*, 132 F. Supp. 2d 22 (D.D.C. 2000); *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). Indeed, in *Thompson, Abramson*, and *Lentz*, this Court rejected the argument that FDA regulatory action regarding DES established a connection between DES lawsuits and the District of Columbia. *See* Attachment A to Exhibit 2, at p. 5; Attachment B to Exhibit 2, at p. 4 n.6; Attachment C to Exhibit 2, at p. 4 (rejecting the argument that "the District of Columbia was the 'place of the industry approval efforts' and [plaintiff's] suggest[ion] that an 'army' of DES lobbyists and salespeople who may be potential witnesses reside within this Court's subpoena power."). In both *Thompson* and *Abramson*, the Court also rejected Lilly's previous filing of a lawsuit in the District of Columbia as determinative of a motion to transfer. *See* Attachment A to Exhibit 2, at p. 5; Attachment B to Exhibit 2, at pp. 2-3.

community that has no relation to the litigation; and (4) the administrative difficulties flowing from court congestion.

These factors point toward the District of Massachusetts and away from the District of Columbia.  First, the state of Massachusetts has a strong interest in seeing that the product liability claims of Massachusetts citizens are tried fairly and effectively.  Plaintiff was a Massachusetts resident for 32 years and claims she was exposed to DES *in utero* there, although she is now a Texas resident.  (Exhibit 1, at No. 2)  The next factor, the applicable law, favors Massachusetts because Massachusetts state tort law is likely to be applied.  Specifically, under the District of Columbia governmental interests choice of law analysis, a court must consider four factors to determine which state's substantive law applies: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered.  *Herbert v. District of Columbia*, 808 A.2d 776, 779 (D.C. 2002); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971).  These factors weigh heavily in favor of Massachusetts law; indeed, not a single factor favors application of District of Columbia law.  *See Thompson*, Attachment A to Exhibit 2, at p. 5 n.5 (court found, under similar facts, that the District of Columbia choice of law analysis "would seemingly compel this court to apply Massachusetts law").

Additionally, it is inequitable to saddle the District of Columbia and its resources, including its jurors, with the burden of disposing of a case that has no connection whatsoever to the forum.  As Judge Walton noted in *Thompson*, the District of Columbia's court calendar is "quite congested" and there is no reason that the District of Massachusetts cannot adequately resolve this case. (*See* Attachment A to Exhibit 2, p. 4 n.4)  Similarly, in *Abramson*, Judge Bates

10

held that "given the very minimal connection of this lawsuit to the District of Columbia, it does not seem appropriate to burden this jurisdiction and its limited resources, or even Magistrate Judge Kay, with this case."[7] (Attachment B to Exhibit 2, pp. 4-5)

## CONCLUSION

This case has a substantial connection to the District of Massachusetts and no connection to the District of Columbia. The interests of justice and the convenience of the parties and witnesses support transfer of this case to the District of Massachusetts. Accordingly, Lilly respectfully requests the Court to transfer this action to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).

Dated: April 19, 2007

Respectfully submitted,

 /s/ John C. Coots
Michelle R. Mangrum, D.C. Bar No. 473634
John Chadwick Coots, D.C. Bar No. 461979
Emily J. Laird, D.C. Bar No. 485890
SHOOK, HARDY & BACON, L.L.P
600 14TH Street, NW Suite 800
Washington, D.C. 20005-2004
Phone: (202) 783 -8400
Fax: (202) 783-4211

and

David W. Brooks
Mark C. Hegarty
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Phone: (816) 474-6550
Fax: (816) 421-5547
**ATTORNEYS FOR DEFENDANT
ELI LILLY AND COMPANY**

---

[7]    As Judge Bates noted, Magistrate Kay's experience mediating DES cases is not sufficient reason to keep a case in the District of Columbia that, for the convenience of the parties and in the interest of justice, should be transferred. *See also Thompson*, Attachment A to Exhibit 2, at p. 4, n.4 (noting that Judge Kay's experience did not warrant denial of a motion to transfer).

11

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, this _19th_ day of April, 2007, which sent notification of such filing to all counsel of record listed below.

Aaron M. Levine
Aaron Levine & Associates
1320 19th St., N.W., Suite 500
Washington, D.C. 20036
**Attorneys for Plaintiff**

_/s/ John C. Coots_____
**ATTORNEY FOR DEFENDANT**
**ELI LILLY AND COMPANY**

12

**Exhibit 1**

To
Memorandum of Points and Authorities in Support of  Defendant Eli
Lilly and Company's Motion to Transfer to the District of Massachusetts

Filed in:
*Kathryn T. Halloran v. Eli Lilly and Company,*
District Court for the District of Columbia
Civil Action No. 07-152

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KATHRYN T. HALLORAN,                    ]
                                        ]
            Plaintiff,                  ]
                                        ]
    v.                                  ]    Civil Action No. 1:07-cv-00152 (JDB)
                                        ]
ELI LILLY AND COMPANY,                  ]
                                        ]
            Defendant.                  ]

## PLAINTIFF KATHRYN T. HALLORAN'S ANSWERS TO DEFENDANT ELI LILLY AND COMPANY'S FIRST SET OF INTERROGATORIES

1.      Please state your present name, date and place of birth, Social Security Number, and all other names you have used or been known by, including the period during which you were known by such other names.

**ANSWER:**  Name: Kathryn T. Halloran; Date of Birth: 11/14/62; Place of Birth: St.

Margaret's Hospital, Dorchester, MA; Social Security No.: 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; Prior Name: Kathryn

Rooney prior to 10/3/87.

2.      Please state in chronological order the full address for each residence at which you have resided for a period of thirty (30) days or more, and state the date each such residency was commenced and terminated.

**ANSWER:**     a.      39 Magdala Street
                        Dorchester, MA 02124
                        (Birth - 1967)

                b.      30 Blue Spruce Lane
                        Hanover, MA 02339
                        (1967 - 1987)

                c.      91 West Main Street
                        Unit 2
                        Norton, MA 02766
                        (1987 - 1994)

                d.      399 North Doeskin Place

Tucson, AZ 85748
(1994 - 1996)

e.    600 Legacy Drive
Apt 1925
Plano, TX 75023
(1996)

f.    101 Beech Lane
Elmhurst, PA 18416
(1997 - 2002)

g.    2818 Bent Tree Drive
Schertz, TX 78154
(Mar 2002 - Dec 2002)

h.    903 Fawnway
San Antonio, TX 78258
(Dec 2002 - present)

3.    Please state whether you have ever been married and, if so, for each marriage identify the full name and present address of your spouse, the date and place of marriage and the date, place and manner of the termination of any such marriage, including the date, place and court where any divorce or dissolution was granted.

**ANSWER:**    Spouse: Donald G. Halloran; Address: 903 Fawnway, San Antonio, TX 78258;

Date of Marriage: 10/3/87; Place of Marriage: St. Mary's Church, Hanover, MA 02339.

4.    Please state your educational background including colleges attended, years of such attendance and any degrees or diplomas obtained from such colleges.

**ANSWER:**    Plaintiff's educational background is as follows:

a.    Hanover High School
Hanover, MA

1977 - 1981

High School Diploma

b.    Westbrook College
Portland, ME

1981 - 1983

A.S., Dental Hygiene

c.    Providence College
      Providence, RI

      1992 - 1994

      B.A., Liberal Studies

5.    Please state the name and address of your present and past employers and/or any periods of self-employment, including the job title, nature of duties, length or period of employment or self-employment, average monthly earnings and reason for leaving employ of each such employer or period of self-employment.

**ANSWER:**    Plaintiff objects to this Interrogatory as irrelevant as there is no claim for loss of wages at this time.

6.    Except for the present lawsuit, if you ever made any claim or filed any lawsuit for personal injury or disability, please provide details, including the approximate date each such claim or other lawsuit was filed; the nature of your claimed injury, disability or condition; the name and address of each person, firm or corporation against whom such claim or suit was made or filed; the amount received by way of settlement, payment or judgment for each such claim or suit; the approximate date, location and circumstances of the occurrence causing any injury, disease or disability for each such suit or claim; and the name and address of the court, commission or other body before which such claim or suit was filed, if any, and the number assigned to each such claim or suit.

**ANSWER:**    a.    Plaintiff made a claim for personal injuries related to an automobile accident occurring on 7/16/89;

             b.    Filed against Randy LaFortune, The Commerce Insurance Company, Webster, MA;

             c.    Settlement Amount: $11,000.

7.    Please state the name and address of each physician or other health care provider who has treated you for <u>any</u> reason which you do <u>not</u> attribute to your alleged exposure to the diethylstilbestrol (DES) referred to in your Complaint, including the nature, date, location, of any such treatment, the name and address of each hospital, clinic or other health care facility where you were confined, treated or examined, and the dates of such confinement, treatment or examination.

**ANSWER:**    Plaintiff objects to this Interrogatory as overly broad, burdensome, irrelevant, nor

will it lead to the discovery of any relevant information pertaining to Plaintiff's claims. In addition, Plaintiff objects to any health care provider not relevant to her gynecological or associated conditions. Without waiving said objections, Plaintiff submits that her current primary care physician is North Hills Family Medicine, 19222 Stone Hue, Suite 104, San Antonio, TX 78258.

8.      In regard to your menstrual history, please state your age at the onset of menstruation, whether menstruation was regular, and if not, describe such irregularities as well as any cramping, fainting, dizzy spells, or any other difficulties with menstruation (such as excessive or prolonged flow), and if you have consulted a physician or other health care provider regarding any of these irregularities or difficulties, please state the name and address of the physician, the approximate dates consulted and the reason for any such consultation, examination or treatment.

**ANSWER:**    Plaintiff's age at menarche was approximately age 12. She consulted Dr. Paul Richer, 173 Worcester Street, Suite 3, Wellesley Hills, MA 02481 in 1989 for irregular menstrual cycles.

9.      If you have ever attempted to become pregnant, but been unable to conceive, please state the number of months or years (give approximate dates) you were unable to conceive, and the name and address of any physician or other health care provider consulted and the date(s) of each consultation.

**ANSWER:**    Plaintiff started attempting pregnancy in approximately January 1989. She first consulted Dr. Paul Richer on 9/14/89 and Dr. Gary Frishman, Women & Infants Hospital of Rhode Island, Division of Reproductive Medicine & Infertility, 1 Blackstone Place, Providence, RI 02905 on 9/12/91 regarding infertility.

10.      If you have ever been pregnant, please state the number of months or years you attempted to conceive before becoming pregnant and the approximate date of conception; the date of termination of the pregnancy and the result (e.g., childbirth, miscarriage, spontaneous abortion, therapeutic abortion, etc.); the name and address of each physician or other health care provider consulted during the pregnancy; the name and address of the physician or other health care provider attending the birth (or abortion); the name and address of the hospital where each child was born (or each pregnancy, miscarried or aborted); if the pregnancy resulted in the birth of a child, the name and address of each child; whether the child had any birth defects or

inherited diseases/disorders and, if so, the nature of each such birth defect, disease or disorder; whether each child is now deceased and, if so, the date, place, and cause of each child's death.

**ANSWER:**    Not applicable as Plaintiff has not been able to conceive.

11.    Please state the inclusive dates of your mother's pregnancy with you, your mother's and father's names as of your date of birth, your mother's address during her pregnancy with you, the name and address of the doctor and/or other persons who delivered you, the name and address of the hospital or other place where you were delivered, including a description of the location if not delivered in a hospital.

**ANSWER:**    Inclusive Dates of Pregnancy: Approximately 3/62 - 11/14/62; Parent's Names:

Margaret R. Rooney and William J. Rooney; Mother's Address During Pregnancy: 39 Magdala

Street, Dorchester, MA 02124; Doctor's Name and Address: Edmund L. Carey, M.D., now

deceased; Hospital: St. Margaret's Hospital, Dorchester, MA.

12.    Please list the names of all drugs and medications used by you within the last ten (10) years, including, but not limited to, antibiotics, contraceptives, tranquilizers, sleeping pills, antihypertensives, diet aids or hormones; the inclusive dates each such drug or medication was used; the purpose for which each such drug or medication was used; and the name of the physician or other health care provider, if any, who prescribed such drug or medication for your use.

**ANSWER:**    Plaintiff objects to this Interrogatory as overly broad and burdensome, nor will it

lead to the discovery of information relevant to her claim.  The only relevant hormone Plaintiff

has been exposed to is the DES she was exposed to in utero.

13.    Please describe with specificity the injuries, disabilities and/or conditions which you allege to have resulted from your alleged exposure to the drug identified in your Complaint, including any complaints of injury, disability, or condition which have now subsided and when you last had those complaints, and if you are claiming any aggravation of any injury, disability, or condition, describe such condition, and the manner in which you claim such condition was aggravated by your alleged exposure to the drug identified in the Complaint.

**ANSWER:**    Plaintiff has been advised recently that the following injuries were related to her

DES exposure:

    a.    Small, T-shaped uterus;

b.  Primary infertility;

c.  Anxiety and terror regarding future adverse pregnancy outcomes;

d.  Anger and resentment that reproductive potential is damaged;

e.  Depression; and

f.  Relationship with spouse complicated by anger, resentment, and disappointment.

All of the aforementioned injuries have resulted in Plaintiff proceeding with two adoptions with its concomitant extraordinary expenses. Plaintiff reserves the right to supplement this Answer as discovery progresses.

14.  If you have been confined, examined, x-rayed or treated in any hospital or clinic or physician's office or have consulted any physician or other health care provider as a result of any injury, disability, or condition which you allege to have resulted from your alleged exposure to the drug identified in your Complaint, please state the name and address of each such hospital or clinic or office, the name and address of each treating physician or other health care provider, and the nature of the treatment received by you, including the date of each such confinement, examination, x-ray or treatment.

**ANSWER:** Gary Frishman, M.D., Women & Infants Hospital of Rhode Island, Division of Reproductive Medicine & Infertility, 1 Blackstone Place, Providence, RI 02905.

15.  Please itemize any and all special damages you claim to have incurred as a result of your alleged exposure to the drug identified in your Complaint, including but not limited to, doctor and hospital bills, prescription bills, counseling services, nursing services, and other employed help, including the name and address of the person or company performing the service, the amount of each bill and the nature of the services rendered.

**ANSWER:** A listing of Plaintiff's special damages will be provided upon receipt and compilation.

16.  If you are claiming any loss of income or earnings as a result of any injuries, disabilities or conditions attributed to your alleged exposure to the drug identified in your Complaint, please state the total amount claimed, the dates of employment missed and the reasons therefor; and for the last 5 years in which you filed federal income tax returns, state as to each return filed, your name as it appeared on the federal return, whether the return was a joint return, and the name of your spouse as it appeared on the return if a joint return was filed, and

your address as it appeared on the return.

**ANSWER:**   Plaintiff is not making a claim for loss of earnings at this time.

17.   As to your mother, please state her current full name, maiden name, and any other names used; her date and place of birth; her present address if living, the date and cause of death if deceased; all residences at which your mother lived for a period of more than thirty (30) days since her pregnancy with you was diagnosed; any and all major illnesses, diseases and/or conditions your mother has or has had and the approximate dates of such illness, disease, and/or condition; the approximate date of each of your mother's pregnancies; the outcome of each of your mother's pregnancies; what drugs, including diethylstilbestrol (DES), were administered in each of your mother's pregnancies; any medical problems developed during your mother's pregnancies; the name and address of each physician or other health care provider your mother consulted during each pregnancy; the name and address of the hospital or clinic where your mother was confined during each such pregnancy; your mother's present marital status and, if married, the name and address of her spouse.

**ANSWER:**   Mother's Name: Margaret R. Rooney; Maiden Name: Cotter; Date of Birth:

10/21/34; Place of Birth: Boston, MA; Present Address: 150 Homestead Lane, Hanover, MA

02339; Prior addresses:

a.   85 Saint Gregory Street
     Dorchester, MA 02124
     (Prior)

b.   39 Magdala Street
     Dorchester, MA 02124
     (1959 - 1967)

c.   30 Blue Spruce Lane
     Hanover, MA 02339
     (1967 - 1998)

Mother's Major Illnesses, Diseases, and/or Conditions: High blood pressure, diagnosed in 1991.

Plaintiff's mother has had five pregnancies as follows:

(1)   LMP approximately 8/59.  Live birth of female on 5/17/60.  Providers: Drs. Edmund L. Carey and Robert P. McKeogh, St. Margaret's Hospital, Dorchester, MA. Medications: None.

(2)   LMP approximately 6/61.  Pregnancy loss on 11/2/61.  Providers: Drs. Edmund

L. Carey and Robert P. McKeogh, St. Margaret's Hospital, Dorchester, MA. Medications: None.

(3)    See Plaintiff's Answer to Interrogatory No. 11. Medications: DES prescribed for prevention of miscarriage.

(4)    LMP approximately 6/64. Live birth of male on 1/14/65. Providers: Drs. Edmund L. Carey and Robert P. McKeogh, St. Margaret's Hospital, Dorchester, MA. Medications: DES prescribed for prevention of miscarriage.

(5)    LMP approximately 2/67. Live birth of female on 10/28/67. Providers: Drs. Edmund L. Carey and Robert P. McKeogh, St. Margaret's Hospital, Dorchester, MA. Medications: DES prescribed for prevention of miscarriage.

Marital Status: Widowed.

18.    As to your father, please state his full name; his place and date of birth; his present address if living, the date and cause of death if deceased; all residences at which your father lived for a period of more than thirty (30) days since the date of your birth; all major illnesses, diseases and/or conditions which your father has or has had and the approximate dates of such illness, disease and/or condition; his present marital status and, if married, the name and address of his spouse.

**ANSWER:**    Father's Name: William J. Rooney, now deceased; Place of Birth: Boston, MA;

Date of Birth: 12/16/35; Date of Death: 8/11/90; Cause of Death: Colon cancer; Prior Addresses:

a.    39 Magdala Street
       Dorchester, MA 02124
       (1959 - 1967)

b.    30 Blue Spruce Lane
       Hanover, MA 02339
       (1967 - 1990)

Father's Major Illnesses, Diseases, and/or Conditions: Colon cancer, diagnosed in May 1988.

19.    As to your brothers and sisters, please state their names at birth; their present names if different from their names at birth and any other names used; their present addresses if living, the date and cause of their deaths if deceased; all major illnesses, diseases and/or conditions which each has or has had and the dates of each such illness, disease and/or condition; the date of each of their births and their relationship to you (natural brother, step-sister, adopted, etc.).

**ANSWER:**   a.     Natural Sister: Elizabeth Rooney, now Robinson; Address: 15 Mary Elizabeth Crescent, North Avoca, NSW 2260; Major Illnesses, Diseases, and/or Conditions: None; Date of Birth: 5/17/60;

           b.     Natural Brother: William J. Rooney; Address: 150 Homestead Lane, Hanover, MA 02339; Major Illnesses, Diseases, and/or Conditions: None; Date of Birth: 1/14/65;

           c.     Natural Sister: Helen Rooney, now Cullen; Address: 34 Rachael Circle, Easton, MA 02375; Major Illnesses, Diseases, and/or Conditions: Infertility, diagnosed in approximately 1993; Date of Birth: 10/28/67.

20.    As to your allegation that your mother ingested diethylstilbestrol (DES) during her pregnancy with you, and that such diethylstilbestrol (DES) was manufactured by Lilly, please state all dates when diethylstilbestrol (DES) was prescribed for your mother, the names and addresses of each physician who prescribed diethylstilbestrol (DES) for your mother, the names and addresses of all pharmacies, physician's offices, hospitals, clinics or other places at which your mother obtained diethylstilbestrol (DES) or it was obtained for her, the name and address of each person known to you or your representatives who has knowledge of facts which support such allegations and please identify each fact and each document which support such allegations.

**ANSWER:**   a.     DES was prescribed from early pregnancy to delivery.

           b.     Quincy OB-GYN, including Drs. Edmund L. Carey and Robert P. McKeogh. Last known address: 67 Coddington Street, Quincy, MA 02169.

           c.     Plaintiff's mother recalls filling her DES prescription at a pharmacy in Dorchester and/or Quincy, MA. Discovery is continuing.

           d.     Plaintiff's mother has knowledge regarding this information. Plaintiff reserves the right to supplement this Answer.

21.    Describe in detail the physical appearance of the diethylstilbestrol you allege your mother ingested, including its form (for example, pill, injection, capsule), the shape, color, or size of any pill, tablet or capsule, the dosage of the DES your mother took, the number of times it was taken per day, and any markings that may have appeared on the product.

**ANSWER:**   Plaintiff's mother recalls that the DES was a small, white, round, cross-scored pill without any other markings or writing on it. Plaintiff reserves the right to supplement this Answer as discovery progresses.

The information contained in these requests as well as the word usage, sentence structure and opinions, are not solely that of the declarant, rather they are the product of counsel in preparation with declarant.

I SOLEMNLY DECLARE AND AFFIRM UNDER THE PENALTY OF PERJURY THAT THE INFORMATION CONTAINED IN THE FOREGOING ANSWERS TO INTERROGATORIES ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

Dated: 3-26-07

_____
KATHRYN V. HALLORAN, Declarant


AARON M. LEVINE & ASSOCIATES

_____
Aaron M. Levine, #7864
1320 19th Street, N.W.
Suite 500
Washington, D.C. 20036
(202) 833-8040

Counsel for Plaintiff

# Exhibit 2

## To
Memorandum of Points and Authorities in Support of  Defendant Eli Lilly and Company's Motion to Transfer to the District of Massachusetts

Filed in:
*Kathryn T. Halloran v. Eli Lilly and Company,*
District Court for the District of Columbia
Civil Action No. 07-152

139094v1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KATHRYN T. HALLORAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| ) | |
| **vs.** ) | **CIVIL ACTION No. 1:07-cv-00152-JDB** |
| ) | |
| ) | |
| **ELI LILLY AND COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## AFFIDAVIT OF JOHN C. COOTS IN SUPPORT OF
## DEFENDANT ELI LILLY AND COMPANY'S MOTION TO TRANSFER

I, John C. Coots, being first sworn on oath, say that the following is true and correct:

I am an attorney in the firm of Shook, Hardy & Bacon, LLP, counsel for defendant Eli Lilly and Company ("Lilly") in the above-captioned action.

2.   **Attachment A** is a true copy of this Court's decision in *Thompson v. Eli Lilly and Company*, Civil Action No. 03-CV-00122 (D.D.C. June 27, 2003) (Walton, J.).

3.   **Attachment B** is a true copy of this Court's decision in *Abramson v. Eli Lilly and Company,* Civil Action No. 03-CV-2541 (D.D.C. Oct. 25, 2004) (Bates, J.).

4.   **Attachment C** is a true copy of this Court's decision in *Lentz, et al. v. Eli Lilly and Company*, Civil Action No. 06-1374 (D.D.C. December 18, 2006) (Huvelle, J.).

5.   **Attachment D** is a true copy of this Court's decision in *McKelvey v. Eli Lilly and Company*, Civil Action No. 06-1820 (D.D.C. April 12, 2007) (Collyer, R.).

Executed on April *19*, 2007

John C. Coots

139089v1

DISTRICT OF         )
                            )ss.

COLUMBIA_____)

       On this 19th day of April, 2007, before me, a notary public in and for said state,

personally appeared John C. Coots, to me personally known, who being duly sworn,

acknowledged that he had executed the foregoing instrument for purposes therein mentioned and

set forth.

_____
NOTARY PUBLIC

My Commission Expires:

KAY D. DALLOSTA
Notary Public District Of Columbia
My Commission Expires June 14, 2007

2

139089v1

# Attachment A

## To
## Affidavit of John C. Coots in Support of
## Defendant Eli Lilly and Company's Motion to Transfer

Filed in:
*Kathryn T. Halloran v. Eli Lilly and Company,*
District Court for the District of Columbia
Civil Action No. 07-152

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NANCY THOMPSON and <br> MARK A. THOMPSON, <br><br> Plaintiffs, <br><br> v. <br><br> ELI LILLY AND COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     Civil Action No. 03-122 (RBW) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER

The plaintiffs, Nancy and Mark Thompson, have brought this product liability action against the defendant, Eli Lilly and Company, for injuries that Mrs. Thompson alleges she suffered as a result of her mother's use of diethylstilbestrol ("DES ) during her mother's pregnancy with Mrs. Thompson.  The defendant seeks to have this case transferred to the District of Massachusetts "[b]ecause it would be more convenient for the parties to litigate this action in the District of Massachusetts -- where the alleged exposure in utero to (DES) took place, where almost all of the fact witnesses reside -- and because there is absolutely no connection between the District of Columbia and plaintiffs' claims.  Motion of Defendant Eli Lilly and Company to Transfer Action, Memorandum of Points and Authorities in Support of Eli Lilly and Company's Motion to Transfer ("Def.'s Mem. ) at 2-3.  Upon consideration of the parties' submissions and for the reasons set forth below, the Court will transfer this case to the District of Massachusetts.

1

28 U.S.C. § 1404(a)(2000) provides that for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.   A district court is given broad discretion when considering whether to grant or deny a motion to transfer, which entails first determining whether the action could have been brought in the proposed transferee district and, if so, examining several private and public interest factors.  While deference is typically given to a plaintiff's choice of forum and the moving party "bears the burden of demonstrating that transfer pursuant to Section 1404(a) is warranted[,] Gemological Institute of America v. Thi-Dai Phan, 145 F. Supp. 2d 68, 71 (D.D.C. 2001), courts recognize that less deference is given when the chosen forum is not the plaintiff's home forum, Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C. 2001). With these considerations in mind, the Court will first examine whether this case could have been brought in the District of Massachusetts.

**(A)     Could This Action Have Been Brought in the District of Massachusetts?**

Before a case may be transferred to another judicial district, a court must determine whether the transferee district is a proper venue and can exercise personal jurisdiction.  Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…   In this case, it is undisputed that this action could have been brought in Massachusetts.  This is because the alleged events that gave rise to the plaintiffs' claims occurred there, as Mrs. Thompson's mother received and ingested the DES in Massachusetts. Def.'s Mem. at 1. And, pursuant to Massachusetts' long-arm statute, it is also undisputed that a federal court in Massachusetts would be able to exercise personal jurisdiction over the defendant,

2

as Eli Lilly acknowledges that it had sufficient contacts with Massachusetts through its

sales of DES in that jurisdiction. Id. at 3. (citing Mass. Gen. Laws ch. 223A, § 3

(Massachusetts long-arm statute governing torts allegedly committed in Massachusetts)).

Having concluded that this action could have been brought in Massachusetts, the Court

will now evaluate whether the private and public interest factors favor the transfer of this

action.

**(B)      Do the Interests of the Parties and the Public Favor of Transferring this Case
          to the District of Massachusetts?**

In considering a motion to transfer, a Court must examine several factors, such as:

"[t]he convenience of the witnesses of plaintiff and defendant; ease of access to sources

of proof; availability of compulsory processes to compel the attendance of unwilling

witnesses; the amount of expense for the willing witnesses; the relative congestion of the

calendars of potential transferor and transferee courts; and other practical aspects of

expeditiously and conveniently conducting a trial.   Boers, 133 F. Supp. 2d at 65 (D.D.C.

2001) (citation omitted).

Upon evaluating these factors, it is abundantly clear that this case should be

transferred to the District of Massachusetts. Massachusetts is the situs where the DES

was ingested and therefore the location where any injury resulting from its use occurred.

Nearly all of the fact witnesses reside in Massachusetts, including the plaintiffs, Mrs.

Thompson's mother, all of the physicians who have treated Mrs. Thompson for the injury

she allegedly sustained, and Mrs. Thompson's primary care physicians. Def.'s Mem. at

1-2. Furthermore, the ability to access much of the physical proof with the least effort

favors transfer to Massachusetts, as that is where Mrs. Thompson and her mother's

3

DES are also located there.[1]

In addition, because the majority, if not all of the witnesses reside in Massachusetts, any concerns regarding the availability of compulsory process and the expense of securing the presence of the witnesses also favor transfer to Massachusetts. While the plaintiffs focus on the relative congestion of the two courts' calendars as grounds for the case not being transferred,[2] the Court notes that this case is at an early stage of the litigation[3] and this Court's calendar is actually quite congested.[4]

Other relevant factors also weigh in favor of transferring this case to Massachusetts. Not only do the local interests in this matter strongly favor transferring

---

[1] Defendant notes that the three major issues in DES cases are: the questions of exposure, product identification, and the nature and extent of Mrs. Thompson's alleged injuries. Regarding exposure, defendant anticipates the need to obtain relevant medical records and to depose the physicians that are still alive who treated plaintiff's mother during her pregnancy. Def.'s Mem. at 5. As for product identification, defendant maintains it will need to depose the dispensing pharmacist or other pharmacy employees regarding the dispensing practices of the pharmacy or pharmacies in question. Id. Finally, regarding Mrs. Thompson's injuries, defendant contends that proof of the alleged injuries will come to the fact-finder in the form of medical records located in Massachusetts and from the testimony of Mrs. Thompson's and her mother's physicians. Three of the seven physicians identified by the plaintiffs who treated Mrs. Thomson are still living and believed to currently practice in Massachusetts. Id. at 6. In addition, most, if not all of the other witnesses and non-witness evidence are also located in Massachusetts.

[2] Plaintiffs' counsel seeks to make a comparison between the efficiency and speed of this Court and the District of Massachusetts in resolving DES cases. The basis offered for this comparison is two DES cases originally filed in this Court on October 7, 2002. Compare Christine Foti et ux v. Eli Lilly and Company, Civ.A. No. 02-1977, with Hillary Blank et ux v. Eli Lilly and Company, Civ.A. No. 02-1976. In the first case a motion to transfer the case to Massachusetts was granted on November 22, 2002, and according to the plaintiffs, no action has yet been taken by the Massachusetts district court. And, in an effort to make a comparison between the two jurisdictions, the plaintiffs assert that in the second case a settlement conference has been scheduled for August 5, 2003, before another member of this Court.

[3] This case is currently in the early stages of litigation as the close of discovery is not scheduled to occur until October 15, 2003.

[4] Neither party disputes that the assigned judicial settlement officer, Magistrate Judge Kay, has experience settling DES cases, which admittedly could contribute to the expeditious resolution of this action. However, the District of Massachusetts has been exposed to substantial DES litigation as well, see, e.g., Payton v. Abbott Labs., 100 F.R.D. 336 (D. Mass. 1983), and has had at least five DES cases transferred to it from this district in the last year and a half. Defendant's Reply in Support of its Motion to Transfer ("Def.'s Reply ) at 4. Therefore, the plaintiffs have failed to demonstrate that calendar congestion in the District of Massachusetts would unduly delay the resolution of this case or that this court is better equipped to ensure the timely processing of a DES case.

4

this case to Massachusetts, but it also appears that Massachusetts state law will govern

the plaintiffs' claims.[5] And a Massachusetts court is better equipped to apply

Massachusetts law, as another member of this Court has commented, the interests of

justice "[a]re best served by having a case decided by the federal court in the state whose

laws govern the interests at stake.    Trout Unlimited v. United States Dep't of

Agriculture, 944 F. Supp. 13, 19 (D.D.C. 1996).

   While this Court finds it significant that Massachusetts has such strong

connections to this case, equally significant is that the District of Columbia has no such

connection to this matter.  The plaintiffs assert that there is a connection between the

District of Columbia and their claims because this jurisdiction is where the original

industry wide promotion of DES occurred and where defendant lobbied and applied for

Food and Drug Administration  approval to sell and promote DES.  Plaintiffs' Opposition

to Defendant's Motion to Transfer ("Pls' Opp'n ) a t 4.  Plaintiffs also argue that the

defendant spent over $6,500,000 in 2001 on marketing and lobbying efforts in the

District of Columbia and currently employs at least 58 lobbyists in this jurisdiction.  Id.

at 5.  Plaintiffs further note that the defendant itself has selected the District of Columbia

as its home forum in litigation against its insurers involving coverage of the DES claims

that have been filed against it.  Id.  This Court is unconvinced that these contacts, which

have no direct connection to this case, favor maintaining this case in the District of

Columbia.

---

[5] If this case remained in the District of Columbia, Massachusetts substantive law would most likely govern this litigation. To determine what law this Court would have to apply, it must use the District of Columbia's choice of law analysis. See Ideal Electronic Security Co. v. International Fidelity Ins. Co., 129 F.3d 143, 148 (D.D.C. 1997).  And this analysis would seemingly compel this court to apply Massachusetts law.

Finally, the Court notes that this case is clearly distinguishable from a recent DES case in which this Court denied transfer pursuant to 28 U.S.C. § 1404(a). In Ingram v. Eli Lilly & Co., No. Civ.A. 02-2023, 2003 U.S. Dist. LEXIS 1619, (D.D.C. January 28, 2003) (Walton, J.), the plaintiff's injuries arose in Seattle, Washington. Id. at *5. However, the plaintiff's mother lived in Oklahoma; the prescribing obstetrician was located in California; plaintiff's expert witnesses resided in Texas, Arkansas, Pennsylvania and Alabama; and none of the expert witnesses that the defendant customarily used were located in the State of Washington State. Id. Thus, although the State of Washington was the location where the DES was prescribed and ingested, none of the vital witnesses remained in that jurisdiction. Id. In this case, there is no such concern over a lack of a substantial connection to one particular jurisdiction. Therefore, the plaintiffs' reliance on Ingram is misplaced.

Accordingly, it is, hereby this 27th day of June, 2003,

ORDERED that the defendant's motion to transfer the case is GRANTED. It is

FURTHER ORDERED that this case shall be transferred to the District of Massachusetts.

REGGIE B. WALTON
United States District Judge

# Attachment B

### To
### Affidavit of John C. Coots in Support of
### Defendant Eli Lilly and Company's Motion to Transfer

Filed in:
*Kathryn T. Halloran v. Eli Lilly and Company,*
District Court for the District of Columbia
Civil Action No. 07-152

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VALERIE ABRAMSON, et al.,

Plaintiffs,

v.

ELI LILLY AND COMPANY,

Defendant.

Civil Action No. 03-2541 (JDB)

## MEMORANDUM OPINION

This in utero diethylstilbestrol (DES) exposure case brought by plaintiff Valerie Abramson and her husband Chett Abramson ("plaintiffs") against defendant Eli Lilly and Company is one of many currently pending in this Court. Following initial discovery, defendant has moved to transfer the action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of New Jersey, which defendant submits is a more convenient forum.[1] The Court agrees based on the specific facts of this case.

## FACTUAL BACKGROUND

There is no dispute as to certain facts central to the disposition of defendant's motion. Plaintiffs reside in New Jersey, as do plaintiff Valerie Abramson's parents. Ms. Abramson's gynecologist during the relevant 1988 to 2001 period practices in New Jersey. The other relevant physicians identified by plaintiffs in interrogatory responses all practice in New Jersey and reside in New York (well within the subpoena power of the District of New Jersey pursuant to

---

[1] Briefing on the motion was completed on August 31, 2004.

-1-

Fed.R.Civ.P. 45(b)(2)). No non-party fact witness resides in the District of Columbia or is within the subpoena power of this Court. None of the events relating to plaintiffs giving rise to this specific action have any connection to the District of Columbia. As plaintiffs expressly agree, this case could have been brought in the District of New Jersey.

Plaintiffs do, however, claim some connection to the District of Columbia by virtue of defendant's lobbying and promotion efforts with the Food and Drug Administration ("FDA") relating to DES, which occurred largely in the District of Columbia, although for the most part long ago. Plaintiffs also point out that defendant has itself brought suit in the District of Columbia against its insurers over DES claims. Moreover, plaintiffs observe that many DES cases have been brought here, and that the judges of this Court, and particularly Magistrate Judge Kay, have developed an expertise in these cases.

## ANALYSIS

Most of the judges of this Court, including this judge,[2] have denied similar transfer motions in DES cases against Eli Lilly. Where there is no connection to this forum and a strong connection to one other forum, however, transfer has been granted. See Thompson v. Eli Lilly and Co., Civil Action No. 03-0122 (RBW) (D.D.C. June 27, 2003).

The Court agrees that this action could have been brought in the District of New Jersey.[3] However, plaintiffs' choice of forum is entitled to some weight, although it is given less deference when (as here) the chosen forum is not the plaintiff's home forum. See Piper Aircraft v. Reyno,

---

[2] See Roing, et al. v. Eli Lilly & Co., Civil Action No. 02-2211 (JDB) (D.D.C.) (Order dated Jan. 28, 2003).

[3] There is no doubt that the District of New Jersey would have jurisdiction over the action and that venue is proper there.

454 U.S. 235, 255-56 (1981); <u>Boers v. United States</u>, 133 F. Supp. 2d 64, 65 (D.D.C. 2001). On the other hand, defendant has engaged in some lobbying and other efforts related to DES in the District of Columbia. Moreover, it is the forum of choice for many DES cases against Eli Lilly, and even has been the forum of choice by Eli Lilly for its litigation against insurers regarding coverage for DES claims.[4] Although it does not appear likely that the District Judges of this Court have developed much real expertise in the substance of these DES cases, certainly Magistrate Judge Kay has considerable experience in the settlement context. Finally, it is undisputed that plaintiffs and defendant both have counsel (the latter in the District of Columbia) experienced in handling this type of litigation, and that those counsel have cooperated in other DES cases in the District of Columbia with respect to making witnesses and documents (including medical records) readily available. These relevant factors, taken together, do not weigh clearly in favor of transfer to the District of New Jersey.

What may be different about this case, however, is the convenience of witnesses factor under section 1404(a). Indeed, "the most critical factor to examine under 28 U.S.C. § 1404(a) is the convenience of the witnesses." <u>Chung v. Chrysler Corp.</u>, 903 F. Supp. 160, 164 (D.D.C. 1996). The ease of access to sources of proof, the expenses for willing witnesses, and whether the claim arose elsewhere are all important considerations in this assessment. <u>See</u> <u>Trout Unlimited v. United States Dep't of Agriculture</u>, 944 F. Supp. 13, 16 (D.D.C. 1996).

Here, all the relevant fact witnesses on exposure, injury and causation are more easily

---

[4] Eli Lilly opposed a motion to transfer in that case, defending its right to choose the District of Columbia courts against allegations that it was engaged in forum shopping. Defendant has explained, however, that the choice of forum there was based in part on the need to accommodate travelers from around the globe.

accessed in New Jersey than in the District of Columbia -- plaintiffs, Ms. Abramson's parents, her gynecologist, and other treating physicians. No fact witness appears to be located in or close to the District of Columbia. The subpoena power of the New Jersey court reaches all those witnesses, while this Court's subpoena power does not.[5] The relevant medical records are also more readily obtained in New Jersey from the various physicians. Nor, quite obviously, did the claim, or any events giving rise to the claim, occur here.

Unlike many of the other DES cases, where relevant witnesses are spread around the country (even in the District of Columbia), this is a case with a single forum that is plainly most convenient for the witnesses -- the District of New Jersey. Moreover, that is the forum where most of the operative facts occurred, although some also apparently occurred in other states but not in the District of Columbia.[6] It is simply beyond cavil that transfer to the District of New Jersey will be considerably more convenient (and less expensive) for the witnesses. Importantly, that will also enable the relevant witnesses to be compelled to testify because they will be within the subpoena power of that court, which is not the case were the action to remain in this Court. Finally, given the very minimal connection of this lawsuit to the District of Columbia, it does not seem appropriate to burden this jurisdiction and its limited resources, or even Magistrate Judge

---

[5] Conceivably, then, some of those witnesses could decline to appear if the case went forward to trial in this Court.

[6] The Court does not find persuasive the argument that DES-related lobbying efforts to the FDA tie this case to the District of Columbia. Documents related to those efforts have already been produced to plaintiff's counsel. Likewise, a 1941 meeting of representatives of drug manufacturers in Washington, D.C., is too attenuated a basis for connecting this action to the District of Columbia.

-4-

Kay, with this case.[7]

Accordingly, defendant's motion to transfer this case to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a) in the interests of justice and for the convenience of the parties and witnesses will be granted.  A separate order will be issued.


/s/    John D. Bates
JOHN D. BATES
United States District Judge

Dated: October 25, 2004

---

[7]  Plaintiffs emphasize the several other cases in this District in which transfer has been denied, including a case brought by Ms. Abramson's sister.  The point remains, however, that section 1404(a) transfer motions are extremely fact-dependent, turning largely on the connection of the specific case to the transferee and transferor forums and the convenience and location of the relevant witnesses.

Copies to:

Patricia Martin Stanford
3609 Hendricks Avenue
Jacksonville, FL 32207
(904) 346-4215
Fax: (904) 346-4275
E-mail: pmslaw1@aol.com
           *Counsel for plaintiffs*

Lawrence Hedrick Martin
FOLEY HOAG LLP
1875 K Street, NW
Suite 800
Washington, DC 20006
(202) 223-1200
Fax: (202) 785-6687
E-mail: lmartin@foleyhoag.com

James J. Dillon
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
(617) 832-1000
Fax: (617) 832-7000
E-mail: jdillon@foleyhoag.com
           *Counsel for defendant*

-6-

# Attachment C

## To
## Affidavit of John C. Coots in Support of
## Defendant Eli Lilly and Company's Motion to Transfer

Filed in:
*Kathryn T. Halloran v. Eli Lilly and Company,*
District Court for the District of Columbia
Civil Action No. 07-152

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KAREN ANNE LENTZ and GERALD A. LENTZ, Jr. | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 06-1374 (ESH) |
| v. | ) ) | |
| ELI LILLY AND COMPANY, | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Karen Anne and Gerald Lentz, who reside in Maine, filed this action in the

Superior Court for the District of Columbia for injuries associated with Mrs. Lentz's *in utero*

exposure to diethylstilbestrol ("DES"). Defendant Eli Lilly, an Indiana corporation, removed the

suit to this Court on the basis of diversity jurisdiction, and now moves to transfer it to the United

States District Court for the District of Maine pursuant to 28 U.S.C. § 1404(a). Defendant

argues that transfer to the District of Maine would serve the interests of justice and the

convenience of the parties because the purchase and ingestion of DES by Mrs. Lentz's mother

occurred in Maine, and the relevant medical records, as well as the key fact witnesses --

including Mrs. Lentz's mother, the doctor who prescribed DES to Mrs. Lentz's mother, and the

doctors who diagnosed and treated Mrs. Lentz's alleged injuries -- are all located in Maine.

(Def. Mot. at 1-2.) Plaintiffs state that they will voluntarily produce the relevant medical records

and make the fact witnesses available for deposition so their live testimony will not be necessary.

They also argue, *inter alia*, that the District of Columbia is the more convenient forum for the

many expert witnesses that are likely to testify in this case, that it is the site of the "original

industry-wide promotion of DES," and that the interpretation of the District of Columbia's statute of limitations will be a central issue in the case. Finally, they assert that their choice of forum is entitled to deference. (Pl. Opp. at 1-6.)

The determination of whether an action should be transferred "is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought," and grants the district court discretion to "adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness." *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 50 (D.D.C. 2000) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (internal quotation marks omitted). As both parties point out, there have been numerous transfer motions in DES cases before this Court over the years. Consistent with the fact-specific approach required for deciding motions to transfer under Section 1404(a), the disposition of these cases has varied according to the particular facts present in the case.

To succeed on a motion to transfer, defendant must first establish that the action could have been brought in the proposed transferee district, *i.e.*, the District of Maine. *DeLoach v. Philip Morris Co.*, 132 F. Supp. 2d 22, 24 (D.D.C. 2000). Second, it must "demonstrate that the balance of convenience of the parties and witnesses and the interest of justice are in their favor." *Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 569 F. Supp. 773, 774 (D.D.C. 1983). It is undisputed that this action could have been brought in the District of Maine. Therefore, it is only the second inquiry that requires examination.

-2-

In evaluating a motion to transfer pursuant to Section 1404(a), a court must weigh a number of private and public interest factors. *See Reiffin*, 104 F. Supp. 2d at 51-52. The relevant private interest factors include, but are not limited to: (1) plaintiffs' privilege of choosing the forum; (2) defendant's preferred forum; (3) location where the claim arose; (4) convenience of the parties; (5) convenience of witnesses, but only to the extent that witnesses may be unavailable for trial in one of the fora; and (6) ease of access to sources of proof. Public interest considerations include: (1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home. *See Airport Working Group of Orange County, Inc. v. U.S. Dep't of Def.*, 226 F. Supp. 2d 227, 229 (D.D.C. 2002) (citing *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996)).

Applying these factors here, the Court finds that they weigh in favor of transfer to the District of Maine. Plaintiff does not dispute defendant's assertion that all of the fact witnesses who have been identified date, as well as both plaintiffs, reside in Maine. The subpoena power of the Maine court reaches all of those potential non-party witnesses, while this Court's does not. Plaintiffs' argument that the District of Columbia is more convenient for the likely expert witnesses is unavailing in comparison. While these potential expert witnesses, who by virtue of their role as paid experts must be prepared to travel to testify and are compensated for doing so, are spread out across many states (*see* Pl. Opp. at 5), one single state -- Maine -- is apparently home to all essential fact witnesses. The relevant medical records are also located in Maine. Therefore, convenience of the witnesses and ease of access to the sources of proof both weigh in favor of transfer.

-3-

Maine, the site of the alleged prescription, purchase, and ingestion of DES by Mrs.

Lentz's mother, is also the location where plaintiffs' specific claim arose, which further weighs

in favor of transfer. Plaintiffs argue that the District of Columbia was the "place of the industry

approval efforts for DES" and suggest, without identifying any, that an "army" of DES lobbyists

and salespeople who may be potential witnesses reside within this Court's subpoena power. (Pl.

Opp. at 6.) However, as Judge Walton noted in another recent DES case, these contacts, which

are not directly related to this particular case, do not tip the balance in favor of maintaining this

case in the District of Columbia, particularly when compared to the nucleus of facts, witnesses,

and documents located in Maine. *See Thompson v. Eli Lilly*, No. 03-122, at 5 (D.D.C. June 27,

2003).

In addition to the private interest factors that decidedly weigh in favor of transfer, the

public interest factors also favor transfer. Though the issue has not been decided, it appears that

while the D.C. statute of limitations may apply, Maine substantive law will govern this case.[1]

And as numerous courts have recognized, the "interests of justice are best served by having a

case decided by the federal court in the state whose laws govern the interests at stake." *Kafack v.*

*Primerica Life Ins. Co.*, 934 F. Supp. 3, 8 (D.D.C. 1996); *see Trout*, 944 F. Supp. at 19.

Similarly, Maine has a greater interest than the District of Columbia in adjudicating the personal

injury claims of Maine citizens under its own tort law. *See Gulf Oil Corp. v. Gilbert*, 330 U.S.

501, 509 (1947).

---

[1] The relevant factors to be considered in the District of Columbia's choice of law
analysis would seem to favor the application of Maine substantive law in this case. *See Ideal*
*Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 148 (D.D.C. 1997); *Herbert v. District of*
*Columbia*, 808 A.2d 776, 779 (D.C. 2002).

-4-

In contrast, the sole factor that weighs against transfer is the plaintiffs' choice of forum. Ordinarily, a plaintiff's choice of forum is entitled to considerable deference. *See Piper Aircraft*, 454 U.S. at 255; *Armco Steel Co., L.P. v. CSX Corp.*, 790 F. Supp. 311, 323 (D.D.C. 1991). However, that deference is minimized where "the plaintiffs' choice of forum has no meaningful ties to the controversy and no particular interest in the parties or the subject matter,"and "the defendant['s] burden in a motion to transfer decreases when the plaintiffs' choice of forum has no meaningful nexus to the controversy and the parties." *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001) (internal quotation marks and citations omitted); *see Liban v. Churchey Group II, L.L.C.*, 305 F. Supp. 2d 136, 141-42 (D.D.C. 2004); *Airport Working Group*, 226 F. Supp. 2d at 230. The deference owed to plaintiffs' choice of forum is further diminished where "transfer is sought to the forum where plaintiffs reside." *Citizen Advocates for Responsible Expansion, Inc. v. Dole*, 561 F. Supp. 1238, 1239 (D.D.C. 1983); *see Payne v. Giant of Maryland, L.L.C.*, 2006 WL 1793303, at *4 (D.D.C. June 28, 2006); *Turner & Newall, P.L.C. v. Canadian Universal Ins. Co.*, 652 F. Supp. 1308, 1310 (D.D.C. 1987) (noting that the presumption against disturbing plaintiff's choice of forum "may switch to defendants' favor in the District of Columbia when neither party resides in the chosen forum and the cause of action arises elsewhere"). The District of Columbia's ties to this case are minimal, while Maine's interests are considerable, as the plaintiffs reside there, the injuries at issue occurred in Maine, and the doctors who prescribed DES to Mrs. Lentz's mother practiced in Maine. The plaintiff's choice of forum therefore carries little, if any, weight and is insufficient to overcome the factors that weigh in favor of transfer.

Accordingly, it is hereby **ORDERED** that defendant's motion to transfer [Dkt. # 17] is

**GRANTED**. The Clerk of the Court is ordered to transfer this case to the United States District

Court for the District of Maine.

**SO ORDERED**.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date: December 18, 2006

-6-

# Attachment D

### To
### Affidavit of John C. Coots in Support of
### Defendant Eli Lilly and Company's Motion to Transfer

Filed in:
*Kathryn T. Halloran v. Eli Lilly and Company,*
District Court for the District of Columbia
Civil Action No. 07-152

139094v1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KIMBERLY MCKELVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1820 (RMC) |
| | ) | |
| ELI LILLY AND COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### ORDER

This is a products liability personal injury case arising from Plaintiff Kimberly McKelvey's alleged in utero exposure to diethylstilbestrol ("DES") manufactured by Eli Lilly and Company ("Lilly"). Lilly moves to transfer this case to U.S. District Court for the Central District of California because it would be more convenient for the parties and the witnesses and because this case has no factual nexus to the District of Columbia. Despite Ms. McKelvey's opposition to the motion, the motion will be granted.

Section 1404(a) authorizes a court to transfer a civil action to any other district where it could have been brought "for the convenience of parties and witnesses, in the interest of justice . . ." 28 U.S.C. § 1404(a). Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The moving party bears the burden of establishing that transfer is proper. *Trout Unlimited v. Dep't. of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). Accordingly, Lilly must make two showings to justify transfer. First, Lilly must establish that Ms. McKelvey originally could

have brought the action in the Central District of California. *See Van Dusen*, 376 U.S. at 622-23.

Second, Lilly must demonstrate that considerations of convenience and the interest of justice weigh

in favor of transfer to the California court. *See Trout Unlimited*, 944 F. Supp. at 16.

Ms. McKelvey concedes that this action could have been brought in California, Pl.'s

Mem. at 2, but she contends that the private and public interest factors do not weigh in favor of a

transfer. The private interest considerations include: (1) the plaintiff's choice of forum, unless the

balance of convenience is strongly in favor of the defendants; (2) the defendant's choice of forum;

(3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the

witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the

fora; and (6) the ease of access to sources of proof. *Trout Unlimited*, 944 F. Supp. at 16 (citing

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). The public interest considerations

include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the

calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local

controversies at home. *Id.*

A plaintiff's choice of forum is entitled to deference, "except when the plaintiff is a

foreigner in that forum." *Thayer/Patricof Educ. Funding, LLC v. Pryor Res., Inc.*, 196 F. Supp. 2d

21, 31-32 (D.D.C. 2002). "[W]hile the plaintiff's choice of forum is generally entitled to deference,

where the forum choice has no factual nexus with the lawsuit, plaintiff's choice of forum may be

accorded less weight in a section 1404(a) analysis . . . . In fact, the presumption may switch to

Defendant's favor when neither party resides in the chosen forum and the cause of action arose

elsewhere." *Abbott Labs. v. U.S. Fid. & Guar. Co.*, No. 88-2232, 1989 WL 5557, *2 (D.D.C. Jan.

10, 1989) (citations and internal quotation marks omitted); *see also Boers v. U.S.*, 133 F. Supp. 2d

64, 65 (D.D.C. 2001) (court should give plaintiff's choice of forum substantially less deference when the forum plaintiff prefers is not his home forum); *Trout Unlimited*, 944 F. Supp. at 17 (deference to plaintiff's choice of forum is mitigated where plaintiff chose a forum with no factual nexus to the case and transfer is sought to a forum with ties to plaintiff and the subject matter of the lawsuit).

Ms. McKelvey does not reside in the District of Columbia and this case did not arise here. Ms. McKelvey resides in Santa Clarita, California. The events that gave rise to this case — the prescription, purchase, and ingestion of DES and Ms. McKelvey's in utero exposure to DES — all occurred in California. Because Ms. McKelvey does not reside here and the District of Columbia has no factual nexus to this case, Ms. McKelvey's choice of forum is given little deference.

Further, private interest considerations compel the transfer of this case to California, a forum with a substantial connection to this case. Ms. McKelvey and her mother both reside in California. Also, Ms. McKelvey's diagnosing and treating doctors are located in California. No witnesses that have been identified thus far are located in D.C. *Accord* Def's Mem. Ex. B, *Abramson v. Eli Lilly & Co.*, No. 03-2541, *4 n.6 (D.D.C. Oct. 25, 2004) (DES case transferred to N.J. because plaintiff and her parents resided in N.J. and the prescribing and treating physicians practiced there; D.C. had no connection to the case); Def's Mem. Ex. A, *Thompson v. Eli Lilly and Co.*, No. 03-122 (June 27, 2003) (DES case transferred to Mass. because plaintiff, her mother, all of the treating physicians, and all of the fact witnesses resided there; D.C. had no factual nexus with the case).

Ms. McKelvey also asserts that the District of Columbia bears a factual nexus to this case based on a May 13, 1941 letter from Lilly regarding lobbying and DES drug applications. Pl.'s Mem. at 8 n.2. Ms. McKelvey's suit alleges DES exposure in 1971. The 1941 letter's connection

3

to this case is so attenuated that it does not establish a factual nexus with this forum. *Accord* Def's

Mem. Ex. B, *Abramson*, No. 03-2541 at *4 n.6 (lobbying efforts in 1941 did not tie case to D.C.).

In addition, non-party witnesses that have been identified are within the subpoena

power of the Central District of California and are not within the subpoena power of this Court.

Generally, a subpoena may be served within the district or within 100 miles. Fed. R. Civ. P.

45(b)(2). Ms. McKelvey also asserts that she will voluntarily provide non-party witnesses for

deposition upon oral request and that subpoenas will not be necessary. Unfortunately, Ms.

McKelvey cannot guarantee the cooperation of non-party witnesses. Lilly is entitled to compel

testimony via subpoena if need be. A court's ability to compel the appearance of unwilling non-

party witnesses is an important factor in determining a motion to transfer. *DeLoach v. Phillip Morris*

*Cos., Inc.*, 132 F. Supp. 2d 22, 25 (D.D.C. 2000); *see Piper Aircraft v. Reyno*, 454 U.S. 235, 258-59

(1981) (finding that because many crucial witnesses were located overseas and therefore beyond the

reach of compulsory process, and because a large portion of the relevant evidence was located in

Great Britain, private interest factors weighed in favor of transferring venue).

Ms. McKelvey argues that she chose to file her suit in the District of Columbia

because she was unable to find counsel in California and because her counsel, who is based in

Florida, also practices in the District of Columbia. She also points out that her experts are all located

on the East Coast. These arguments are unavailing, as the inconvenience and expense to plaintiff's

counsel and to expert witnesses are of minor importance under § 1404(a). *Froessl v. Expervision*,

No. 93-2126, 1994 WL 149855, *2 & *4 (D.D.C. Apr. 14, 1994).

Public interest factors also weigh in favor of transfer. California is the forum that has

an interest in deciding this controversy. Not only is California the place where the cause of action

4

arose, it is also likely that under D.C.'s choice of law analysis California law applies.  *See Jaffe v.*

*Pallotta Teamworks*, 374 F.3d 1223 (D.C. Cir. 2004) (discussing and applying D.C.'s choice of law

rules).  Moreover, it is inequitable to impose the burden of trying this case on the District of

Columbia and its limited resources when this District bears no connection whatsoever to the facts

of this case.  *See* Def's Mem. Ex. B, *Abramson*, No. 03-2541 at *4-5 (when a case bears minimal

connection to D.C., it is not appropriate to burden this jurisdiction and its limited resources with the

suit).

> For the foregoing reasons, Lilly's motion to transfer [Dkt. # 13] is **GRANTED**.  This

case is **TRANSFERRED** to U.S. District Court for the Central District of California.


Date: April 12, 2007

                                             /s/
                              ROSEMARY M. COLLYER
                              United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHRYN T. HALLORAN,        ) | |
|        ) | |
| **Plaintiff,**        ) | |
|        ) | |
| **vs.**        ) | **CIVIL ACTION No. 1:07-cv-00152-JDB** |
|        ) | |
| ELI LILLY AND COMPANY,        ) | |
|        ) | |
| **Defendant.**        ) | |
|        ) | |

## ORDER

UPON CONSIDERATION of Defendant Eli Lilly and Company's Motion to Transfer to the District of Massachusetts,

IT IS HEREBY ORDERED that Eli Lilly and Company's Motion to Transfer to the District of Massachusetts is granted;

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1404(a), this case is transferred to the United States District Court for the District of Massachusetts.

Dated: _____, 2007    _____

                                           The Honorable John D. Bates

cc:      Appended list of counsel of record

139087v1

## <u>COUNSEL OF RECORD</u>

Aaron M. Levine                         Michelle R. Mangrum
Aaron M. Levine & Associates            SHOOK, HARDY & BACON, L.L.P
1320 19th Street, N.W., Suite 500       600 14TH Street, NW, Suite 800
Washington, D.C.  20036                 Washington, D.C.  20005-2004
**Attorneys for Plaintiff**             **Attorneys for Eli Lilly and Company**

139087v1